UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DUSTIN J. LEWIS, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) CASE NO. 09-CV-655-FHM |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| DEFENDANT. | ) |

## OPINION AND ORDER

Plaintiff, Dustin J. Lewis, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir.

---

[1] Plaintiff's August 9, 2006 application for Supplemental Security Income benefits was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) was held September 9, 2008. A supplemental hearing was held April 7, 2009. By decision dated April 28, 2009, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the findings of the ALJ on August 13, 2009. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

2003).  The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was 28 years old at the time of the supplemental hearing on April 7, 2009. [R. 25].  He claims to have been unable to work since November 27, 2005, due to chronic pain syndrome, rheumatoid arthritis, right knee pain, hand pain and swelling, major depression, post-traumatic stress disorder and psychosis with schizophrenic symptoms. [R. 26-34, 50-51, Dkt. 17, p. 1].

The ALJ determined that Plaintiff has severe impairments consisting of schizophrenia, asthma and substance abuse. [R. 11].  The ALJ found that, despite these impairments, Plaintiff retains the residual functional capacity (RFC) to perform the full range of medium work.[2] [R.13].  After taking testimony from a vocational expert at the supplemental hearing, the ALJ determined that Plaintiff's RFC would allow him to perform his past relevant work and that he is not disabled as defined by the Social Security Act. [R. 17-18].  The case was thus decided at step four, with an alternative step-five finding, of the five-step evaluative sequence for determining whether a claimant is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005)

---

[2] At the supplemental hearing, the hypothetical presented by the ALJ to the VE included limitations to simple, unskilled work under routine supervision and minimal contact with the general public. [R. 40-41].

(describing the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts the following errors: 1) the ALJ demonstrated bias at the hearings and deprived Plaintiff of his due process rights; 2) the ALJ failed to properly consider the medical evidence; and 3) the ALJ did not perform a proper credibility determination. [Dkt. 17]. In addition, Plaintiff claims in his Reply brief that the ALJ failed to perform a proper step-four analysis. [Dkt. 21, p. 3]. For the following reasons, the Court finds this case must be reversed and remanded to the Commissioner for reconsideration.

## Medical Evidence

Plaintiff has a history of inpatient psychiatric treatment in 2002, 2003 and twice in 2004. [R. 215-223, 486]. He was diagnosed with schizophrenia, attention deficit disorder, depression and psychotic disorder not otherwise specified (NOS)[3] and has been treated since at least 2003 by Charles H. Hill, M.D., a psychiatrist. [R. 292-298, 360-361, 455-465]. The record indicates Plaintiff was also treated by Boyd K. Lester, M.D., who wrote that, when last seen in October 2005, Plaintiff "was minimally functional, could not focus and concentrate and could not keep time commitments." [R. 323].

---

[3] The category for Psychotic Disorder, NOS (298.9) includes psychotic symptomatology (i.e., delusions, hallucinations, disorganized speech, grossly disorganized or catatonic behavior) about which there is inadequate information to make a specific diagnosis or about which there is contradictory information, or disorders with psychotic symptoms that do not meet the criteria for any specific psychotic disorder. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders Fourth Edition Text Revision (2000) (DSM-IV-TR), 343.

After Plaintiff filed his application for social security benefits, a psychologist, Denise LaGrand, Psy.D., examined Plaintiff on behalf of the agency. Dr. LaGrand conducted a clinical interview, a mental status examination and a Wechsler Adult Intelligence Scale - Third Edition (WAIS-III) and reported the results to the agency on October 12, 2006. [R. 330-336]. Dr. LaGrand's diagnostic impression was that Plaintiff seemed to have some delusions related to working in highly classified security areas without any actual employment to back up the claim; that he related his art work to the formation of a one-world government, along with other themes; and that some distortion of reality versus fantasy was present even on his current medication regime. [R. 335]. She said:

> From a psychological standpoint, based on his reported symptoms, history, and performance on this exam, his ability to perform adequately in most job situations, handle the stress of a work setting and deal with supervisors or co-workers is estimated to be below average.

[R. 336].

Sally Varghese, M.D., an agency consultant, reviewed Dr. LaGrand's report and Plaintiff's treatment records and, on November 9, 2006, prepared a PRT[4] and a Mental RFC Assessment. [R. 337-353]. Dr. Varghese evaluated Plaintiff's impairments under the listings for schizophrenia (12.03), affective disorders (12.04), anxiety related

---

[4] Under the regulations, when evaluating mental impairments, the agency must follow a "special technique." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The agency is required to rate the degree of a claimant's functional limitations caused by those impairments in the areas of "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ then applies those ratings in determining whether the claimant's mental impairments are severe at step two and, if so, whether these severe impairments "meet[ ] or [are] equivalent in severity to a listed mental disorder" at step three. Id. §§ 404.1520a(d)(1-2), 416.920a(d)(1-2). At the ALJ hearing level, "[t]he decision must include a specific finding as to the degree of limitation in each of [those] functional areas." Id. §§ 404.1520a(e)(2), 416.920a(e)(2).

disorders (12.06) and substance addiction disorders (12.09). [R. 337, 347, 351, 355]. She found Plaintiff had "mild" functional limitations in restriction of activities of daily living. [R. 347]. She assessed "moderate" limitations in maintaining social functioning and in maintaining concentration, persistence or pace. *Id.* She concluded that Plaintiff had three episodes of decompensation, each of extended duration, the degree of limitation that satisfies the functional criterion of the listings.[5] *Id.* Regarding functional limitations imposed by Plaintiff's mental impairments, Dr. Varghese found that Plaintiff is "markedly limited" in his ability to understand, remember and carry out detailed instructions and in his ability to interact appropriately with the general public. [R. 351-352, 355-356]. All other functions were rated as "not significantly limited." *Id.*

Dr. Hill, Plaintiff's treating psychiatrist, filled out a Mental RFC Assessment form on August 18, 2008. [R. 466-467]. He opined Plaintiff had "moderate" limitations in ability: to carry out very short and simple instructions; to make simple work-related decisions; to interact appropriately with the general public; to ask simple questions or request assistance; and to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. *Id.* All other activities were rated as "marked," including Plaintiff's ability to understand, remember and carry out short and simple instructions, to sustain an ordinary routine without special supervision and to complete a normal work-day and work-week. [R. 466-467]. Dr. Hill also filled out a Mental Status Form in which he wrote that Plaintiff's appearance was clean, that he always appears

---

[5] The term "repeated episodes of decompensation, each of extended duration" in the listings means "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12:00(C)(4) Mental Disorders.

tired, that he had no abnormal behavior problem and that he relates well during visit(s). [R. 468]. Mental status showed: normal appearance, normal posture, eyes tired, normal contact, normal goals, thoughts clear, no psychosis or delusions, denies suicidal thoughts. *Id.* The doctor listed no problem in daily activities and interests. *Id.* For recommended treatment Dr. Hill wrote: "needs to maintain his medication and office visits." [R. 469]. He responded "yes" to the question: "Can the claimant remember, comprehend and carry out (simple) (complex) instructions on an independent basis? He said "no" regarding Plaintiff's ability to respond appropriately to work pressure, supervision and co-workers. [R. 469]. His diagnosis was Psychosis NOS and he opined Plaintiff was "okay" to handle funds. *Id.*

After receipt of Dr. Hill's report, the agency again analyzed Plaintiff's claim, found there was no change in Plaintiff's condition since the last review and affirmed the November 8, 2006 assessment, as written. [R. 365-366].

ALJ Richard J. Kallsnick held a hearing on September 9, 2008. [R. 47-41]. After taking Plaintiff's testimony and discussing Dr. Hill's RFC with Plaintiff's attorney, the ALJ determined that a consultative examination with a psychologist who would "do a battery of tests" was necessary in order to evaluate his mental impairments. [R. 58-67, 70-71].

On January 13, 2009, Plaintiff was examined by Minor W. Gordon, Ph.D. [R. 486-493]. Dr. Gordon reported Plaintiff's personal and medical history and reviewed medical records from Dr. Hill which he described as "handwritten and are not legible." [R. 487]. He noted in particular a treatment note by Dr. Hill on November 21, 2006, that Plaintiff "still looks somnolent" and that he admitted to Methadone use. [R. 360, 487].

He also noted that Dr. Hill had refused Plaintiff's request for Xanax on January 10, 2007, and reported that Plaintiff was doing very well and seemed to be feeling better, that he seemed much more bright, alert and oriented than he had been in a long time and that the current medication regimen was appropriate. [R. 465, 487]. Dr. Gordon observed that a hospital discharge summary dated May 1, 2006, signed by Dr. Hill, contained a diagnoses of schizophrenia; schizoaffective; possible organic mood disorder; and history of substance abuse. [R. 487]. Dr. Morgan performed a mental status examination and conducted the Minnesota Multiphasic Personality Inventory-II. [R. 488-489]. He said:

> In summary, Dustin Lewis is a 28 year-old single male who alleges having lost his son in October of 2005 as well as not being able to function outside of his home and having been depressed for much of his life so as his primary rationale for his application for disability benefits. Mr. Lewis' memory is intact in all three phases. His social-adaptive behavior reveals difficulty communicating with the general public secondary to dependent and narcissistic personality traits. Medical records accompanying this request for evaluation indicated Mr. Lewis has previously taken his girlfriend's Methadone although he denied having ever done so during today's evaluation. Accordingly Mr. Lewis was thought to have malingered. Mr. Lewis does have some problems with mild depression which alone should not preclude him from gainful employment. His depression is secondary to unmet dependency needs. Mr. Lewis could be expected to perform some type of routine and repetitive task on a regular basis. He also would be able to relate adequately with coworkers and supervisors on a superficial level for work purposes.

[R. 489]. Dr. Morgan diagnosed: Axis I: 1. Malingering; 2. Mild depression, secondary to unmet dependency needs; 3. Opioid abuse; Axis II: Dependent and narcissistic personality traits; Axis III: See review of medical records; Axis IV: Mild; Axis V: GAF: 70. *Id.* He added:

> Should Dustin Lewis be found eligible for benefits, due to a history of drug abuse as well as due to narcissistic personality traits he likely would have difficulty appropriately managing his own funds.

*Id.*

Other medical evidence in the record consists of treatment notes from Daniel Wooster, D.O., for a plethora of physical complaints including asthma, arthritis, right knee pain and right hand contusion after a motor vehicle accident.[6] [R. 408-447, 479, 483, 395, 453-454, 495-501]. The record also contains pain management treatment notes from Don R. Barney, D..O., Advanced Occupational & Rehabilitation, Inc., for September 3, 2008 through June 3, 2009.  [R. 513-514, 545-576, 580-590].

## The ALJ's Decision

The ALJ found Plaintiff has severe impairments of schizophrenia, asthma and substance abuse. [R. 11].  He evaluated Plaintiff's impairments under the "Listings" and found Plaintiff's asthma does not meet the criteria for Listing 3.03 which pertains to asthma or Listing 12.03, pertaining to schizophrenia, and 12.09, pertaining to substance abuse. [R. 12]. Under the "paragraph B" criteria, the ALJ found Plaintiff has no restriction in activities of daily living, that he has mild difficulties in social functioning, and that he has no difficulties in regard to concentration, persistence or pace. [R. 12]. Regarding the fourth category of the B criteria, the ALJ concluded Plaintiff has experienced "one or two episodes of decompensation, each of extended duration, but

---

[6] Some of the records were generated by Michael A. Malloy, M.D., at the Oklahoma Center for Arthritis.

these hospitalizations occurred during the time period when the claimant was using illicit drugs." [R. 12].

In his written decision, the ALJ set forth an RFC assessment for "the full range of medium work as defined in 20 C.F.R. § 416.967(c)." [R. 13]. The RFC he presented to the VE at the hearing was for the full range of medium, light and sedentary with additional restrictions as follows:

> He has been diagnosed with substance addiction disorder, effective disorder, anxiety related disorder, as well as psychotic disorder. Taking away the substance addiction disorder at this point, extracting it from the different disorders for the purpose of this hypothetical, this individual could work in a situation performing simple, unskilled work under routin[e] supervision. He can relate to co-workers and supervisors for work-related purposes. He should avoid the general public. I guess I should phrase that as minimal contact with the general public. H would have symptomatology from a variety of sources that would be of sufficient severity as to be noticeable to him, but nonetheless, he could remain attentive and responsive in the work setting and carry out work assignments satisfactorily. He does take medication for relief of some of his symptomatology. The appropriate use of that medication would not preclude him from remaining reasonably alert to perform required functions presented in a work setting.

[R. 41].[7] Asked whether Plaintiff could perform any of his past relevant work with such an RFC, the VE testified the fishing rod assembly and lock porter jobs would be available. [R. 41-42].[8] The ALJ found Plaintiff was not disabled at step four. [R. 17].

---

[7] Plaintiff has not challenged the ALJ's decision on grounds relating to inconsistency between the RFC in the written version and the RFC given verbally to the VE at the hearing.

[8] The ALJ included Plaintiff's past work as wiring tech as one of jobs that the VE identified as available to a person with Plaintiff's RFC in his written decision. [R. 17]. However, the transcript of the supplemental hearing reflects the VE withdrew the wiring tech job as one of the available jobs because it has an SVP of three and he understood the RFC required unskilled jobs with an SVP of two. [R. 41-

He also entered an alternative step-five finding, adopting the VE's testimony that Plaintiff could do other work, such as kitchen helper, hand packaging, sorter, laundry press, assembly jobs and miscellaneous labor jobs. [R. 18, 42-43].

## Discussion

At the outset, the Court addresses Plaintiff's contention that he was deprived of his due process rights because of alleged bias on the part of the ALJ at the hearings. [Dkt. 17, pp. 2-3]. Upon review of the hearing transcripts and the administrative record in this case, the Court rejects Plaintiff's argument. At the supplemental hearing, both the ALJ and Plaintiff's attorney commented about wind gusts during Plaintiff's testimony that he heard knocking and one night found his door open. [R. 29-31]. The transcript does not reflect that the ALJ intended his questions or comments to be "frightening" to Plaintiff. [R. 29-31]. Nor does the record show bias or disregard for Plaintiff's right to a full and fair hearing. In fact, the majority of the questioning was done by Plaintiff's attorney at both hearings. [R. 27-36, 52-56, 59-62].

The evidence Plaintiff claims the ALJ "attacked" was the Mental Residual Functional Capacity Assessment by Dr. Hill. [R. 57]. During the first hearing, the ALJ clearly was troubled by what he perceived to be inconsistencies between Dr. Hill's treatment notations and his RFC assessment. [R. 57-58]. In order to resolve this conflict, he ordered a consultative examination. [R. 70-71]. This was in keeping with the ALJ's responsibility to ensure that an adequate record is developed during the disability hearing consistent with the issues raised. *See Hawkins v. Chater*, 113 F.3d

---

[8] (...continued)
42].

1164, 1167 (10th Cir.1997). However, because the ALJ failed to demonstrate that he properly weighed that consultative physician's report against the other medical evidence in the record and because he did not adequately explain the reasons for his findings regarding the weight he accorded probative medical evidence, the Court finds this case must be reversed and remanded for reconsideration.

The entire written analysis of the conflicting medical evidence in the ALJ's decision is as follows:

> As for the opinion evidence, little weight is given to the State agency medical consultants opinion regarding the claimant's mental impairments as the consultant only reviewed the medical evidence available at that time and was unable to personally observe or evaluate the claimant. Little weight is given to Dr. LaGrand's opinion at Exhibit 8F. Little weight is also given to Dr. Hill's opinion as his own records do not support his medical source statement. Great weight is given to Dr. Gordon's opinion at Exhibit 26F, who completed further testing.

[R. 17].

The Court finds such a conclusory statement, without the specificity or clarity that allows for meaningful review, fails to conform to the requirement that the ALJ provide reasoning for his decision. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding "[i]n the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion," and thus the ALJ's unexplained conclusion was "beyond meaningful review"). The Court, therefore, concludes remand is necessary in order for the ALJ to provide a clear and specific explanation regarding how and why he evaluated the medical evidence,

including Dr. LaGrand's report, Dr. Varghese's PRT findings, Dr. Hill's records and opinion and Dr. Lester's letter. [R. 330-336].

Dr. LaGrand's report contained her test results, clinical findings and comments regarding Plaintiff's ability to perform adequately in most job situations, handle the stress of a work setting and deal with supervisors or co-workers. [R. 330-336]. The ALJ acknowledged this evidence but gave it "little weight" without explaining how much weight it was accorded and why. [R. 15-17]. He implied that Dr. Gordon had conducted "further testing" but he did not compare Dr. LaGrand's mental status examination and WAIS-III results with Dr. Gordon's mental status examination and MMPI-II results. *Id.*

The ALJ said Plaintiff has experienced only one to two episodes of decompensation, each of extended duration. [R. 12]. Dr. Varghese, however, found otherwise. [R. 347]. Her opinion was based, at least partially, upon Dr. LaGrand's report that some distortion of reality versus fantasy was present even when Plaintiff was on medication. [R. 335]. This conflicts with the ALJ's conclusion that Plaintiff's episodes of decompensation occurred only when he was on illicit drugs. [R. 12]. The ALJ did not explain how he weighed Dr. Varghese's findings and he did not explain how he resolved the conflict between her opinion regarding the "mild" and "moderate" limitations in the first three functional areas and his own findings that Plaintiff had "mild difficulties" or "no restrictions" in those areas.

The ALJ said he favored the opinion of Dr. Gordon, a one-time examining consultative psychologist, over that of Dr. Hill, Plaintiff's treating psychiatrist, in evaluating Plaintiff's credibility and RFC. [R. 17]. Generally, the opinion of a treating source is entitled to greater weight than the opinion of a consultative examiner who has

seen the claimant once. *Doyal,* 331 F.3d at 762 ("The treating physician's opinion is given particular weight because of his 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.')(quoting 20 C.F.R. §§ 416.927(d)(2)).

However, the ALJ apparently did not completely accept Dr. Morgan's diagnoses that excluded schizophrenia, which according to Plaintiff's hospital 2006 discharge instructions, causes disordered thinking, requires a very ordered environment and for which stress and sudden changes may bring out symptoms. [R. 236]. The ALJ did not explain how Dr. Hill's diagnosis of schizophrenia, which he adopted in his step two findings and which was accepted by Dr. LaGrand and Dr. Varghese, was compatible with Dr. Morgan's opinion that Plaintiff was malingering and suffered only mild depression and dependent and narcissistic personality traits. Although the Court does not reweigh the evidence or substitute its judgment for that of the ALJ, it must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met. *Grogan, id.* (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). In this case, because the medical evidence that the ALJ relied upon is inconsistent with the remainder of the record, namely the opinion of Plaintiff's treating physician and two agency medical experts, particularly regarding Plaintiff's diagnoses, the ALJ's failure to articulate his findings is especially problematic.

Finally, the only evidence from Dr. Lester in the record is his single-page letter dated August 31, 2006, in which he described Plaintiff as minimally functional in 2005.

13

[R. 323]. Although this letter may not be entitled to "controlling weight," it tends to support Plaintiff's claims of the severity of his condition in 2005 and, upon remand, should be included in the ALJ's discussion of the evidence along with an explanation regarding how he weighed the evidence in determining Plaintiff's credibility and functional limitations. *See Clifton*, 79 F.3d at 1009-10 (decision must demonstrate that the ALJ considered all of the evidence).

Because the ALJ failed to make clear the weight he gave to the various medical opinions and the reasons for that weight, this case must be remanded to the Commissioner to articulate those findings. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (level of specificity that is sufficient to make clear to subsequent reviewers the weight accorded medical opinions and the reason for that weight is required) "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Washington v. Shalala,* 37 F.3d 1437, 1437 (10th Cir. 1994) (quotations omitted).

## Conclusion

The ALJ failed to demonstrate that he had properly considered all the medical evidence relevant to Plaintiff's claim of disabling mental impairments. Because the Court cannot meaningfully review the ALJ's determination absent findings explaining how the medical evidence was weighed, it cannot say the Commissioner's determination is supported by substantial evidence. Because the medical evidence must be reconsidered prior to evaluation of Plaintiff's credibility and assessment of

Plaintiff's RFC, Plaintiff's allegations of error at subsequent steps of the evaluative sequence are not addressed in this opinion and order.

The decision of the Commissioner finding Plaintiff not disabled is REVERSED and REMANDED to the Commissioner for reconsideration.

Dated this 30th day of December, 2010.

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE